1

2

3

4

5

6

7

8                                    UNITED STATES DISTRICT COURT

9                              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEFFREY DONNELL ROBINSON                    Case No.  1:20-cv-00980-JLT-HBK (PC)

12              Plaintiff,                         FINDINGS AND RECOMMENDATIONS TO
                                                  GRANT IN PART AND DENY IN PART
13        v.                                      DEFENDANTS' EXHAUSTION-BASED
                                                  MOTION FOR SUMMARY JUDGMENT[1]
14   C. CRYER, et al.,
                                                  (Doc. No. 53)
15              Defendant.
                                                  FOURTEEN-DAY OBJECTION PERIOD
16

17

18        Pending before the Court is the Motion for Summary Judgment filed by Defendants L.

19   Merritt and K. Phui on January 18, 2023.[2]  (Doc. No. 53, "MSJ").  Plaintiff did not file any

20   opposition and the time to do so has expired.  *See* docket, s*ee also* L.R. 230(l).  For the reasons

21   below, the undersigned recommends the district court grant in part and deny in part Defendant's

22   MSJ.

23        ////
          ////
24        ////

25

26   ───────────────────
27   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2022).
28   [2] Defendants note their intention to file a merits-based motion for summary judgment as to all three
     Defendants by the Court's October 25, 2023 deadline.

1

## I.     BACKGROUND

2

### A. Summary of Plaintiff's Complaint

3       Plaintiff Jeffrey Donnell Robinson ("Plaintiff" or "Robinson"), a state prisoner, initiated

4   this action by filing a pro se civil rights complaint under 42 U.S.C. § 1983.  (Doc. No. 1).  In his

5   Complaint, Plaintiff alleged that various prison officials and medical staff delayed treatment for

6   his fractured hip, resulting in prolonged pain and irreparable injury.  (Doc. No. 1 at 10-17).  The

7   undersigned screened the complaint pursuant to 28 U.S.C. § 1915A and found that Plaintiff stated

8   a cognizable claim of medical deliberate indifference against Defendants C. Cryer and L. Merritt.

9   (Doc. No. 10).  Plaintiff filed an amended complaint (Doc. No. 25), which the undersigned

10  screened and found stated an additional claim as to Defendant Phui.  (Doc. No. 41).  In his FAC,

11  Plaintiff asserts that Defendants made him "wait and wait, in pain subjecting him to . . . take

12  medication longer than he has too [sic] for his right hip injury." (Doc. No 25 at 6).  Plaintiff

13  alleges he has spent "2 years and 6 months waiting for surgery causing him injury after injury . . .

14  [t]he inactions of the defendants has caused Plaintiff to be put in a wheelchair[.] [D]efendants

15  failed to respond and did not[hing] at all to [address] Plaintiff's serious medical needs.  Causing

16  irreparable injury." (*Id.*).  All three Defendants answered the complaint.  (Doc. No. 48).

17

### B. Defendant's Exhaustion-Based Motion for Summary Judgment

18      After motion practice and discovery, and in compliance with the scheduling order (Doc.

19  No. 52), Defendant timely filed the instant exhaustion based MSJ on January 18, 2023.  (Doc. No.

20  53).  In support, Defendants submit a statement of undisputed material facts (Doc. No. 53-1); the

21  declaration of S. Gates (Doc. No. 53-3); and copies of Plaintiff's health care grievances and

22  prison officials' responses (Doc. No. 53-4).  Defendants contend the uncontroverted evidence

23  proves Plaintiff did not fully exhaust his available administrative grievances regarding his Eighth

24  Amendment claim against Defendants Merritt and Phui because Defendants are not named in

25  Plaintiff's health care grievances.

26

### C. Plaintiff's Opposition to Exhaustion-Based MSJ

27       Plaintiff has not filed any opposition to Defendants' MSJ.  *See* docket.  Defendants

28  served the MSJ on Plaintiff by First-Class Mail.  (Doc. No. 55 at 2-3).  The time for Plaintiff to

1   file any opposition has long expired.  L.R. 230(l).

2                              **II.    APPLICABLE LAW**

3        **A. Summary Judgment Standard**

4        Summary judgment is appropriate when there is "no genuine dispute as to any material

5   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

6   material where it is (1) relevant to an element of a claim or a defense under the substantive law

7   and (2) would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242,

8   247 (1987).

9        The party moving for summary judgment bears the initial burden of proving the absence

10  of a genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When

11  the moving party has met this burden, the nonmoving party must go beyond the pleadings and set

12  forth specific facts by affidavits, deposition testimony, documents, or discovery responses,

13  showing there is a genuine issue that must be resolved by trial.  *See* Fed. R. Civ. P. 56(c)(1);

14  *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir.

15  2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is

16  insufficient.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the

17  evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party,

18  to return a verdict in that party's favor.  *Id.*

19       In an exhaustion-based summary judgment motion, the defendant bears the initial burden

20  of establishing "that there was an available administrative remedy, and that the prisoner did not

21  exhaust that available remedy."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the

22  defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence

23  showing that there is something in his particular case that made the existing and generally

24  available administrative remedies effectively unavailable to him."  *Id.*  The ultimate burden of

25  persuasion remains, however, with defendant.  *Id.*

26       The undersigned has carefully reviewed and considered all arguments, points and

27  authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any,

28  objections, and other papers filed by the parties.  The omission to an argument, document, paper,

1    or objection is not to be construed that the undersigned did not consider the argument, document,

2    paper, or objection.  Instead, the undersigned thoroughly reviewed and considered the evidence it

3    deemed admissible, material, and appropriate for purposes of issuing these Findings and

4    Recommendations.

5              **B.  Exhaustion Under the PLRA**

6              Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

7    U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

8    correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

9    § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life."  *Porter v.*

10   *Nussle*, 534 U.S. 516, 532 (2002).  It is a condition precedent to filing a civil rights claim.

11   *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

12             The PLRA recognizes no exception to the exhaustion requirement, and the court may not

13   recognize a new exception, even in "special circumstances."  *Ross v. Blake*, 578 U.S. 632, 648

14   (2016).  The one significant qualifier is that "the remedies must indeed be 'available' to the

15   prisoner."  *Id.* at 639.  A prison's internal grievance process controls whether the grievance

16   satisfies the PLRA exhaustion requirement.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

17             However, the Ninth Circuit has held that "a prisoner exhausts such administrative

18   remedies as are available . . . under the PLRA despite failing to comply with a procedural rule if

19   prison officials ignore the procedural problem and render a decision on the merits of the

20   grievance at each available step of the administrative process."  *Reyes v. Smith*, 810 F.3d 654, 658

21   (9th Cir. 2016); *see also Franklin v. Foulk*, 2017 WL 784894, at *4–5 (E.D. Cal. Mar. 1,

22   2017); *Franklin v. Lewis*, 2016 WL 4761081, at *6 (N.D. Cal. Sept. 13, 2016).  Thus, a prisoner's

23   failure to list all staff members involved in an incident in his inmate grievance, or to fully

24   describe the involvement of staff members in the incident, will not necessarily preclude his

25   exhaustion of administrative remedies.  *Reyes*, 810 F.3d at 958; *Foulk*, 2017 WL 784894, at

26   *4 ("[T]he court in *Reyes* found that even though the plaintiff's grievance failed to name two

27   physicians on the prison's three-person pain committee, prison officials were put on notice of the

28   nature of the wrong alleged in the suit—that the plaintiff was wrongfully denied pain

1   medication."); *Lewis*, 2016 WL 4761081, at *6 ("[T]o the extent Defendants argue that Plaintiff

2   failed to comply with a procedural requirement by not naming Defendants in [his appeal], this

3   deficiency is not necessarily fatal to Plaintiff's claim pursuant to Reyes"); *Grigsby v. Munguia*,

4   2016 WL 900197, at *11–12 (E.D. Cal. Mar. 9, 2016) (appeal pursued through all three levels of

5   review challenged the excessive force incident, and prison officials aware of defendant Baker's

6   involvement); *see also Bulkin v. Ochoa*, 2016 WL 1267265, at *1–2 (E.D. Cal. Mar. 31,

7   2016) (declined to dismiss reckless endangerment claims based on failure to name two defendants

8   in appeal because prison officials addressed the claim on the merits, were alerted to the problem,

9   knew the actors involved, and were given an opportunity to rectify the alleged wrong); *see*

10  *also McClure v. Chen*, 246 F.Supp.3d 1286, 1292–94 (E.D. Cal. Mar. 28, 2017) (claim that prison

11  officials failed to provide adequate medical attention for an eye injury suffered after falling from

12  his bunk, the same as raised in his federal complaint and pursued until the appeals were granted,

13  was sufficient to exhaust remedies).

14          Nonetheless, for administrative remedies to be exhausted by California prisoners as to

15  defendants who were not identified in the inmate grievance, there must be a "sufficient

16  connection" between the claim in the appeal and the unidentified defendants such that prison

17  officials can be said to have had "notice of the alleged deprivation" and an "opportunity to

18  resolve it."  *Reyes*, 810 F.3d at 959 (finding that plaintiff had satisfied PLRA exhaustion

19  requirements as to two prison doctors despite not having identified them in his inmate appeals

20  because there was a sufficient connection between plaintiff's appeal based on inadequate pain

21  management, and the doctors, who served on the prison committee that had denied plaintiff

22  medication); *McClure*, 246 F.Supp.3d at 1293–94 (remedies exhausted even though doctors not

23  named in appeal; prison was placed on notice).

24          An inmate must exhaust available remedies but is not required to exhaust unavailable

25  remedies.  *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*).  "To be available, a

26  remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'"  *Id.*

27  (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)).  "Accordingly, an inmate is

28  required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain

1    'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016)

2    (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

3           Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead

4    and prove." *Jones*, 549 U.S. at 204.  It is the defendant's burden to prove that there was an

5    available administrative remedy, and that the prisoner failed to exhaust that remedy.  *Albino*, 747

6    F.3d at 1172.  "Once the defendant has carried that burden, the prisoner has the burden of

7    production.  That is, the burden shifts to the prisoner to come forward with evidence showing that

8    there is something in his particular case that made the existing and generally available

9    administrative remedies effectively unavailable to him."  *Id*.  If the court concludes that the

10   prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal

11   without prejudice.  *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th

12   Cir. 2005).

13          **C.  CDCR Grievance Procedures**

14          CDCR's health care grievance process governs this action.  *See* Cal. Code Regs. tit. 15, §§

15   3999.225 - 3999.237 (2019).  At the time relevant to this action, a prisoner was required to

16   proceed through two levels of review (an institutional level and a headquarters level), unless

17   otherwise excused under the regulation, in order to exhaust available remedies.  *Id*.,

18   § 3999.226(a)(2).  A prisoner initiates the exhaustion process by submitting a CDCR Form 602

19   ("grievance").  *Id*., §§ 3999.226, 3999.227(a).  The grievance must "describe the specific

20   complaint that relates to their health care which they believe has a material adverse effect on their

21   health or welfare" and "shall include any involved staff member's last name, first initial, title or

22   position, and the date(s) and description of their involvement."  *Id*., § 3999.227(g)(1).  "If the

23   grievant does not have information to identify involved staff member(s), the grievant shall

24   provide any other available information that may assist in processing the health care grievance."

25   *Id*., § 3999.227(g)(2).  The prisoner "shall document clearly and coherently all information

26   known and available to him or her regarding the issue."  *Id*., § 3999.227(g).

27          If dissatisfied with the institution-level response, the prisoner must appeal to the

28   headquarters level.  The headquarters level is handled by the Health Care Correspondence and

1   Appeals Branch (HCCAB).  *Id.*, §§ 3999.225, 3999.229.  The appeal must be submitted "within

2   30 calendar days plus five calendar days for mailing from the date noted on the CDCR 602 HC."

3   *Id.*, § 3999.229(a).

4       "The headquarters' level review constitutes the final disposition on a health care grievance

5   and exhausts administrative remedies but does not preclude amending a response previously

6   made at the headquarters' level." *Id.*, § 3999.230.

### III.    ANALYSIS

#### A.  Plaintiff's Failure to Oppose the Motion.

9       Plaintiff did not file an opposition to Defendant's MSJ, (*see* docket), nor did Plaintiff

10  submit a separate statement of undisputed facts as required by Local Rule 260(a).  Where a party

11  fails to oppose a motion for summary judgment, "Rule 56 is clear that although a court *may*

12  deem facts admitted in the exercise of its discretion, it need not do so." *Warkentin v. Federated*

13  *Life Ins. Co.*, 594 F. App'x 900, 902–03 (9th Cir. 2014) (alteration in original); *see* Fed. R. Civ.

14  P. 56 advisory committee's note to 2010 amendment ("[T]he court may choose not to consider

15  [a] fact as undisputed, particularly if the court knows of record materials that show grounds for

16  genuine dispute").  A court, however, is not authorized to automatically grant summary

17  judgment to a defendant solely because a plaintiff fails to oppose the motion. *Cristobal v.*

18  *Siegel*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir. 1994); *Martinez v. Stanford*, 323 F.3d 1178, 1182

19  (9th Cir. 2003).

20      Where, as here, a party does not challenge the facts asserted by the moving party, the non-

21  moving party may be deemed to have admitted the validity of those facts. *See* Fed. R. Civ. P.

22  56(e)(2).  Further, Local Rule 230(l) provides that the "[f]ailure of the responding party to file an

23  opposition or to file a statement of no opposition may be deemed a waiver of any opposition to

24  the granting of the motion and may result in the imposition of sanctions."  Thus, the Court may

25  grant Defendant's unopposed motion for summary judgment if the supporting papers are

26  themselves sufficient to warrant granting the motion and do not on their face reveal a genuine

27  issue of material fact. *See Henry v. Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993).

28      ////

**B. Material Facts Regarding Exhaustion of Administrative Remedies**

As previously stated, the undersigned considers the entire record and deems only those facts true which are properly supported by evidence.  Following a thorough review of the evidence submitted, the undersigned finds these material facts are deemed undisputed, unless otherwise indicated:

- During the events giving rise to this action, Plaintiff was incarcerated at California Substance Abuse Treatment Facility (SATF) in Corcoran, California.  (Doc. No. 25 at 11; Doc. No. 48 at 5).

- On Sept. 4, 2019 Plaintiff submitted health care grievance SATF HC 19001347.  In it, Plaintiff complained that he was "being forced into long lasting pain and suffering, due to the lack of concern for my hip surgery.  I need medical attention immediately." (Doc. No. 53-4 at 6).  He noted that he was being "excluded from surgery" and "as a result making me suffer cruel and unusual punishment under a serious medical need." (*Id*.).  He states, "1.) Action requested that who took me off of surgery 2) I want immediate surgery." (*Id*.).

- On October 31, 2019, Plaintiff was interviewed by D. Roberts, Health Care Appeals Registered Nurse.  (*Id*. at 9).

- On November 1, 2019, Defendant Cryer issued the institutional level response to Plaintiff's grievance, declining intervention.  (*Id*.).  Cryer documented the various appointments Plaintiff had for his hip with prison medical providers, but did not identify any by name.  (*Id*. at 9-10).  The response indicated that, "[a] medium priority request for services was submitted for orthopedic surgery evaluation."  (*Id*. at 10).  Cryer described medications being provided for Plaintiff's pain and noted that Plaintiff would receive follow-up appointments with his primary care provider after his orthopedic surgery evaluation.  (*Id*.).

- Plaintiff submitted an appeal to the headquarters level, again requesting "immediate surgery."  (*Id*. at 5).  He asserted that the delay in treating him was "subjecting [him] to pain and suffering and violating [his] Eighth Amendment [rights]."  (*Id*.).

1      •  On February 4, 2020, S. Gates issued the headquarters level response to Plaintiff's

2          appeal, again declining intervention.  (*Id*. at 12).  Gates documented the steps medical

3          providers were taking to address Plaintiff's ongoing injury, including taking x-rays,

4          CT scans, ordering physical therapy, and pending appointments with Plaintiff's

5          primary care physician.  (*Id*. at 12-13).  Gates noted, "[t]here is no indication your care

6          has not been provided pursuant to the rules and regulations governing the management

7          and delivery of medically or clinically necessary health care services."  (*Id*. at 13).

8          The response stated, "This decision exhausts your administrative remedies."  (*Id*.).

9      •  Plaintiff filed his second health care grievance, SATF HC 20000867, on June 11,

10         2020, stating that he still has not received surgery for his right hip.  (*Id*. at 15).

11         Plaintiff also asserted that his requests to be removed from his kitchen work

12         assignment had been wrongly denied, given his physical limitations.  (*Id*.).  Plaintiff

13         stated that he was "continuously being deprived of a serious medical need" because he

14         still had not received surgery and continued to be forced to work under conditions that

15         caused him pain.  (*Id*.).

16      •  On August 19, 2020, B. Edwards issued the institutional level response to Plaintiff's

17         grievance, declining intervention.  (*Id*. at 22).  The response noted that Plaintiff saw

18         his primary care provider on June 8, 2020, and "it was recommended for you to have

19         total right hip replacement surgery. Your medical records support there is a pending

20         order for arthroplasty hip total replacement; however this appointment may be

21         rescheduled to ensure patient and staff safety due to the recent COVID-19 crisis."  (*Id*.

22         at 23).  The response acknowledged Plaintiff's concerns about his work assignment,

23         stating, "[w]hile California Correctional Health Care Services health care providers

24         are responsible for documenting a patient's functional capacity to be considered in

25         making work assignment decisions, custody is responsible for determination of

26         appropriate work assignment."  (*Id*.).

27      •  Plaintiff filed an appeal on September 15, 2020, disputing the decision not to correct

28         Plaintiff's work assignment or expedite his surgery.  (*Id*.).  Plaintiff stated, "[t]his

1
2
3
4

decision, action, omission, policy or regulation has had a material adverse effect on

my health in violation of my 8th and 14th Amendments Cruel Unusual Punishment

and due process rights therefore Nurse Practitioner L. Merritt, Chief Executive Officer

C. Cryer and Chief Executive Officer B. Edwards are responsible." (*Id.* at 16).

5
6
7
8

- The headquarters level response from S. Gates upheld the decision not to intervene in

Plaintiff's work assignment or medical care, largely repeating the reasoning provided

in the institutional level response. (*See id.* at 25-26). The response concludes, "[t]his

decision exhausts your administrative remedies." (*Id.* at 26).

9
10

**C. Plaintiff Did Not Exhaust Health Grievance Log No. SATF HC 19001347 as to Defendant Phui or Merritt**

11
12
13
14
15

To properly exhaust his administrative remedies, Plaintiff must follow CDCR's grievance process, which includes providing the names of "any involved staff member . . . and the date(s) and description of their involvement." Cal. Code Regs. tit. 15 § 3999.227(g)(1). It is undisputed that at no point in Plaintiff's grievance No. HC 19001347 does he identify any specific individual who denied or delayed Plaintiff's medical care.

16
17
18
19
20
21
22
23
24

A prisoner's failure to list all staff members involved in an incident in his grievance, or to fully describe the involvement of staff members in the incident, will not necessarily preclude exhaustion of administrative remedies. *McClure*, 246 F.Supp.3d at 1291 (citing *Reyes*, 810 F.3d at 658); *Washington v.* Guerra, 2017 WL 1197861, at *5 (C.D. Cal. Jan. 31, 2017), *report and recommendation accepted by*, 2017 WL 1197667 (C.D. Cal. Mar. 29, 2017); *Bulkin v. Ochoa*, 2016 WL 1267265, at * 2 (E.D. Cal. Apr. 1, 2016). However, "there must be a 'sufficient connection' between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had 'notice of the alleged deprivation' and an 'opportunity to resolve it.'" *McClure*, 246 F.Supp.3d at 1291 (quoting *Reyes*, 810 F.3d at 659).

25
26
27
28

For example, in *McClure*, prisoner plaintiff sued a physician assistant (Horton) and doctor (Chen) who he alleged were deliberately indifferent to his serious medical needs when they 1) allowed him to be placed in a top bunk despite being epileptic, and 2) failed to promptly provide medical care after plaintiff suffered a seizure, fell from the top bunk, and sustained a head

1    injury.  *Id*. at 1289.  Due to their delay in care he ultimately lost vision in the eye.  *Id*.

2           McClure did not name either Horton or Chen in his two grievances.  However, in

3    responding to one of plaintiff's grievances, prison officials specifically referred to plaintiff's

4    various appointments with Horton and Chen and determined from medical records that Horton

5    and Chen were those primarily responsible for the response to plaintiff's injury.  *Id*. at 1293-94;

6    (See also *McClure*, Doc. No. 47-6 at 34).  Prison officials were therefore deemed to be on notice

7    as to the alleged deprivation and the involved staff.  *McClure*, 246 F.Supp.3d at 1294.

8           Here, Plaintiff's grievance makes no reference to any specific individuals, incidents, or

9    administrative actions that violated his constitutional rights.  He states only that he has been

10   "excluded from . . . hip surgery[,] as a result making me suffer cruel and unusual punishment."

11   (Doc. No. 53-4 at 6).  There is no evidence that Plaintiff's grievance or his interview with D.

12   Roberts on October 31, 2019 put prison officials on notice as to Defendant Phui's or Defendant

13   Merritt's involvement in the alleged wrongdoing.

14          Indeed, Plaintiff's FAC reflects the large number of medical professionals who were

15   involved in Plaintiff's medical care and the difficulty of tracing the wrongdoing stated in his

16   grievance to any particular individual(s).  Plaintiff refers to at least six different CDCR doctors

17   (Akabike, Smith, Phui, Adibi, Ndu, and Scharffenberg) who evaluated him while he was at

18   SATF, (*Id*. at 16, 21, 24), on top of various specialists, outside consultants, and supervising

19   physicians, and mentions eight different nurses (Alvarado, Taurenton, Farajado, Merritt, Hurtado,

20   Rosario, Fishburn, and Fenn) who treated Plaintiff for his hip.  (*Id*. at 17-18, 21-24).  In the

21   administrative response to his grievance, prison officials do not provide any indication that they

22   recognized the involvement of Defendants Phui or Merritt in the alleged deprivations.

23          Accordingly, Plaintiff cannot show there was a "sufficient connection" between his

24   grievance and the unidentified defendants (i.e. Phui and Merritt) to have put prison officials on

25   notice as to specific the nature of the harm and those involved.  Therefore, the undersigned finds

26   that Plaintiff failed to exhaust grievance Log No. SATF HC 19001347 as to Defendants Phui and

27   Merritt.

28          ////

11

### D. Plaintiff Exhausted Health Care Grievance Log No. SATF HC 20000867 As To Defendant Merritt But Not Defendant Phui

Plaintiff's second grievance differs in one significant respect from his first grievance—contrary to Defendant's assertion, it named two of the defendants in this action.  While his initial Health Care Grievance Log No. SATF HC 20000867 does not name any individuals, Plaintiff's headquarters level appeal stated, "[t]his decision, action, omission, policy or regulation has had a material adverse effect on my health in violation of my 8th and 14th Amendments Cruel Unusual Punishment and due process rights therefore Nurse Practitioner L. Merritt, Chief Executive Officer C. Cryer and Chief Executive Officer B. Edwards are responsible."  (*Id.* at 16).

Under earlier CCR grievance rules, "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or *person later named* by the appellant that was not included in the originally submitted CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal . . . and addressed through all required levels of administrative review up to and including the third level."  Cal. Code Regs. tit. 15 § 3084.1 (2017) (emphasis added); s*ee Smith v. Mendoza*, 2021 WL 930706, at \*9 (N.D. Cal. Mar. 10, 2021) (finding that plaintiff did not exhaust his claims as to defendants who were mentioned in an "upper-level appeal" but were not named "in the originally submitted CDCR Form 602"); *see also Ethridge v. Rodriguez*, 2015 WL 13237012, at \*7 (E.D. Cal. Nov. 13, 2015)

Under current regulations, an inmate submitting a health care grievance appeal "shall not include *new issues* that were not included in the original health care grievance."  Cal. Code Regs. tit. 15, § 3999.229 (emphasis added); *see also Torres v. Finander*, 2022 WL 1840331, at \*5 (C.D. Cal. Feb. 28, 2022).  Notably, the regulations no longer state that failure to name an individual in the initial grievance precludes a finding of exhaustion as to that person.  A plain reading of the regulation suggests, by negative implication, that an inmate *may* include in an appeal new persons who were not identified in the original grievance.  Relatedly, the doctrine of *expressio unius est exclusio alterius* implies that the legislature, in creating a bar as to one type of addition (claims) expressly declined to bar another type of addition (persons).  Therefore the fact that Plaintiff first names Defendants Cryer and Merritt in his appeal—rather than in his initial grievance—does not

1    bar him from exhausting his administrative remedies as to those Defendants.

2    In this case, Plaintiff's appeal states that Defendant Merritt, among others, was among

3    those "responsible" for the failure to treat his hip.  (Doc. No. 53-4 at 16).  Because Plaintiff is not

4    attempting to add a new issue or claim, but rather specifying the individuals responsible for the

5    wrongdoing stated in his initial grievance, he did not run afoul of applicable regulations.  The

6    undersigned finds that in naming Defendant Merritt in connection with failure to treat his hip—

7    the underlying wrong identified in both his grievance and his FAC—he sufficiently exhausted his

8    administrative remedies as to her.

9    As to Defendant Phui, however, Plaintiff makes no mention of him in Healthcare

10   Grievance Log No. SATF HC 20000867.  Therefore in order to find that Plaintiff exhausted his

11   grievance as to Defendant Phui, there would need to be a "sufficient connection" between the

12   claim in the grievance and the unidentified defendant (Phui) such that prison officials can be said

13   to have had "notice of the alleged deprivation" and an "opportunity to resolve it."  *Reyes*, 810

14   F.3d at 959.  As with Plaintiff's first grievance, discussed *supra*, his second grievance failed to

15   provide details that would permit prison officials to infer that he alleged wrongdoing against Dr.

16   Phui in particular.  Plaintiff's second grievance, filed on June 11, 2020, refers to an appointment

17   on June 8, 2020 where he was informed that it could take up to 90 days to schedule him for hip

18   surgery.  (Doc. No. 53-4 at 15).  On that date, Plaintiff also sought an updated medical chrono

19   discharging him from his kitchen work assignment; the grievance appears to suggest, though does

20   not clearly state, that he was denied the chrono.  (*Id*.).  The institutional response to Plaintiff's

21   grievance acknowledged that on June 8, 2020 Plaintiff received "primary care provider

22   evaluation" but made no reference to Defendant Phui.  (*Id*. at 22-23).  Nor does Plaintiff's FAC

23   make any reference to an appointment on June 8, 2020, much less that he saw Defendant Phui on

24   that date.  Without specifying particular appointments, dates, or providing other information that

25   would connect the grievance to Defendant Phui, Plaintiff failed to place prison officials on notice

26   as to the particular constitutional deprivation.  Thus, while Plaintiff specifically identified

27   Defendants Cryer and Merritt in his second grievance, he neither specifically identified Dr. Phui

28   nor provided information that would establish a "sufficient connection" to Phui to have exhausted

13

1   his administrative remedies against him.  The undersigned therefore finds that Plaintiff failed to

2   exhaust his administrative remedies as to Dr. Phui.

3                                      **IV.    CONCLUSION**

4           For the reasons stated, the undersigned finds that Plaintiff failed to exhaust his

5   administrative remedies as to either Defendant Merritt or Defendant Phui for Grievance Log No.

6   SATF HC 19001347 and that Plaintiff exhausted his administrative remedies as to Defendant

7   Merritt but not as to Defendant Phui for Health Care Grievance Log No. SATF HC 20000867.

8           Accordingly, it is **RECOMMENDED**:

9           Defendants' motion for summary judgment (Doc. No. 53) be GRANTED as to Defendant

10  Phui and DENIED as to Defendant Merritt.

11                                  **NOTICE TO PARTIES**

12          These findings and recommendations will be submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14)

14  days after being served with these findings and recommendations, a party may file written

15  objections with the Court.  The document should be captioned "Objections to Magistrate Judge's

16  Findings and Recommendations."  Parties are advised that failure to file objections within the

17  specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834,

18  838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

19

20  Dated:     April 19, 2023

21                                          HELENA M. BARCH-KUCHTA
                                            UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26

27

28